William Donald HAILS

v.

**ATLANTIC RICHFIELD COMPANY
and De Felice Equipment Company.**

Civ. A. No. 82–1468.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Oct. 16, 1984.

Fuhrer & Flournoy, Leonard Fuhrer, Alexandria, La., for plaintiff.

Gist, Methvin, Hughes & Munsterman, Howard B. Gist, III, Alexandria, La., for Highlands Ins. Co.

Provosty, Sadler & deLaunay, William H. deLaunay, Jr., Alexandria, La., for Atlantic Richfield Co. (ARCO).

Deutsch, Kerrigan & Stiles, Christopher Tompkins and Bert M. Cass, Jr., New Orleans, La., for Graham and Ins. Co. of North America.

Phelps, Dunbar, Marks, Claverie & Sims, Clayton G. Ramsey, New Orleans, La., for Horn Const. & Maint., Inc. & North East Ins. Co. & Defelice Equip. Co.

NAUMAN S. SCOTT, District Judge.

## RULING

This matter is before us on plaintiff's Motion to Strike Defendant's Jury Demand. Argument having been heard and briefs submitted, we find as follows.

## FACTS

This is an action brought under the General Maritime Law and the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333, to recover for personal injuries sustained while plaintiff was aiding in the unloading of a vessel. Specifically, plaintiff, a platform worker, alleges that while in the course and scope of his employment, he was sent aboard the M/V BETTY G to help unload cargo, where he was struck by a piece of heavy compressor equipment swinging from a platform based crane. Joined as defendants were Atlantic Richfield Company (ARCO) as platform owner, De Felice Equipment Company, Inc. (De Felice) as vessel owner and Horn Construction Company (Horn) as crane operator. Horn and De Felice were sued under the General Maritime Law. ARCO was sued under the General Maritime Law and OCSLA. Plaintiff designated his claim as one in admiralty under Rule 9(h), Fed.R.Civ.P., without benefit of a trial by jury.

Defendant ARCO answered the complaint, and despite plaintiff's 9(h) designation, requested a trial by jury. It contends that its status as owner of the fixed platform exempts it from admiralty jurisdiction, leaving only jurisdiction under the OCSLA. As authority for this proposition, ARCO cites the OCSLA statute itself, 43 U.S.C. § 1333, and *In Re Dearborn Marine Service, Inc.*, 499 F.2d 263 (5th Cir.1974). Having reviewed the applicable case law, we conclude that defendants' demand for a jury trial is not well founded.

## JURISDICTION

If plaintiff had been injured on a vessel on the high seas, it is clear that admiralty jurisdiction would apply. But because his accident occurred on the Outer Continental Shelf, the Court must determine the effect, if any, of the provisions of the Outer Continental Shelf Lands Act. *Smith v. Pan Air Corp.*, 684 F.2d 1102, 1109 (5th Cir.1982).

OCSLA makes the law of adjacent states, to the extent such law is not inconsistent with federal law, applicable as "surrogate" federal law to the subsoil and seabed of the Outer Continental Shelf and to the platforms erected thereon, 43 U.S.C. § 1333(a). "In 1969, the Supreme Court decided, in *Rodrigue v. Aetna Cas. & Sur. Co.* [395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969)], that accidents occurring on fixed platforms located on the Outer Continental Shelf are governed by the OCSLA, which 'deliberately eschewed the application of admiralty principles' to platforms; that Act requires the application of State

law, 395 U.S. at 355, 365–66, 89 S.Ct. at 1837, 1842, 23 L.Ed.2d at 369–70." *Smith v. Pan Air Corp.*, 684 F.2d at 1109. Thus, it can be assumed that admiralty jurisdiction is lacking if the substantive law applicable is OCSLA-imposed State law. *Id.* at 1110 fn. 26.

In this case, however, the accident did not occur on the fixed platform. Plaintiff was on the deck of a vessel when he was injured. Therefore, it would appear that maritime jurisdiction would be appropriate if it can be determined that this case meets the necessary tests for finding such jurisdiction.

■ In the seminal Supreme Court case of *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Court determined that admiralty jurisdiction is present where the tort occurs on navigable waters and the wrong bears a significant relationship to traditional maritime activity. 409 U.S. at 268, 93 S.Ct. at 504, 34 L.Ed.2d at 467. *Accord, Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Therefore, applying that test to the facts before us, we find that this is a maritime case. Plaintiff was injured on navigable waters while performing the traditional maritime activity of unloading a vessel. Clearly this gives rise to maritime jurisdiction. *Kamani v. Port of Houston Authority*, 702 F.2d 612, 613 (5th Cir.1983); *see also, Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550, 553 (1959). Moreover, it is significant to us that plaintiff was performing these tasks at the request and for the benefit of defendant ARCO. It makes sense to us that if ARCO desires to obtain the benefits of production with the aid of maritime commercial endeavors, then it must accept the responsibility of appearing in admiralty court to answer for wrongs and injustices arising from those endeavors.

Nonetheless, defendant argues that since ARCO is a fixed rig owner, the tort is "land-based" because: 1) the crane involved is an appurtenance to its rig; and 2) any orders or requests to perform work tasks originated from their position as owner on the rig. We find this argument to be without merit.

■ For jurisdictional purposes, "a tort occurs where the *impact* of the act or omission produces injury." *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe*, 434 F.Supp. 920, 927 (E.D.La.1977) (Rubin, D.J.). *See, Executive Jet*, 409 U.S. at 266, 93 S.Ct. at 504, 34 L.Ed.2d at 466; *Harville v. Johns-Manville Prod. Corp.*, 731 F.2d 775, 782 (11th Cir.1984). "Thus, where a force giving rise to an injury on the waters originates on land, the tort is maritime." *Avondale Shipyards*, 434 F.Supp. at 927; *See generally, Bible v. Chevron Oil Co.*, 308 F.Supp. 312 (E.D.La. 1969). Therefore, the fact that plaintiff's injury was caused by a "land-based" crane or work request does not change the maritime nature of his claim. *Kamani v. Port of Houston Authority*, 702 F.2d at 613; *Kelly v. Smith*, 485 F.2d 520, 526 (5th Cir.1973), *cert. denied sub nom., Chicot Land Co. v. Kelly*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

■ In its final argument, ARCO contends that the case of *In Re Dearborn Marine Service, Inc., supra,* dictates to us that State law must be applied because plaintiff was a platform worker. As explained in *Smith v. Pan Air Corp., supra, Dearborn* involved a platform worker, Monk, who was on a "stand-by" vessel tied up seventy-five feet from a platform when an explosion occurred on the platform. With the explosion, a "flaming ball of oil" rose above the platform. Carried by the wind, the ball of fire engulfed the vessel, killing all aboard. Monk's heirs sought to maintain a suit against the platform defendants for negligence under the Death on the High Seas Act, 46 U.S.C. §§ 761–768 and general maritime law. The district court sustained admiralty jurisdiction over these claims. The Fifth Circuit reversed, concluding that "§ 1332(a)(3) of the OCS-LA, when read against the background of legislative history outlined in *Rodrigue* and the increasing judicial and legislative dis-

satisfaction with strict locality as the sole test of jurisdiction, precludes us from treating Monk's claim against [the platform defendants] as a suit in admiralty." 499 F.2d at 276.

"The basic thrust of the *Dearborn* opinion holding Monk limited to State law remedies (as against the platform defendants) is that Monk, as a platform worker, was only *fortuitously* on a vessel at the time of the explosion and that, otherwise, there was virtually nothing to distinguish between him and his fellow platform-workers who perished on the platform." *Smith v. Pan Air Corp.*, 684 F.2d at 1111 (emphasis added). In the present case, Hails, by contrast, was not "fortuitously" aboard the vessel. He was sent there to unload it at ARCO's request. Furthermore, no other platform workers were involved. Hence, we find *Dearborn* clearly distinguishable from the case at hand and decline to follow it.

As (then Chief) Judge Brown stated in his well-reasoned dissent from the denial of rehearing *Dearborn* en banc:

> "We do not have to make either a blue water or *Sieracki*-ambiguous-amphibious seaman out of (a platform worker) to make maritime principles the source of his (and his heirs') rights.... To establish the ship-related status, I would apply by analogy the test announced in *Offshore Co. v. Robison*, 5 Cir., 1959, 266 F.2d 769 and just recently followed in *Brown v. ITT Rayonier, Inc.*, 5 Cir.1974, 497 F.2d 234. The main question under that test is whether 'the duties which he performed contributed to the function of the vessel as to the accomplishment of its mission ....' *Offshore Co. v. Robison, supra*, 266 F.2d at 779."

*In Re Dearborn Marine Services, Inc.*, 512 F.2d 1061, 1063 (5th Cir.1975) (reh'g enbanc denied) (Brown, C.J., dissenting). We find this reasoning persuasive. Clearly, the plaintiff meets this one leg of the *Robison*

test since he was helping to unload cargo when the vessel's mission was to deliver that cargo to the rig and unload it. Thus, the Court finds plaintiff's application of admiralty jurisdiction in this case proper.\*

## DESIGNATING 9(h)

■ Having determined that admiralty jurisdiction applies, it is necessary to determine whether plaintiff's Rule 9(h) designation deprives defendant of a trial by jury.

In this case two bases of jurisdiction are alleged against ARCO: General Maritime Law and OCSLA. The general maritime law count, which invokes admiralty jurisdiction, is normally tried without a jury on the admiralty side of Federal Court. The OCSLA count, as described infra, employs state law as surrogate federal law and, as such, allows a trial by jury.

In support of its jury demand, ARCO relies heavily on its contention that admiralty jurisdiction does not exist in this case thereby leaving OCSLA as the sole basis of jurisdiction over it. As shown above, however, this is not the case.

■ The pleading device embodied in Rule 9(h) was enacted to allow the plaintiff to preserve admiralty jurisdiction, its unique rules, remedies and procedure, including the nonjury trial, when the pleadings show that admiralty jurisdiction and some other basis of jurisdiction exists. *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir.1975). That other basis is most commonly diversity or federal question jurisdiction.

In the present case, we have found that the facts alleged by plaintiff establish admiralty jurisdiction over the defendant. This being true, "... (t)he election made available to the pleader pursuant to Rule 9(h) is dispositive ...." *Harrison v. Flota Mercante Grancolumbiana, S.A.*, 577 F.2d 968, 986 (5th Cir.1978); *Romero, supra;*

---

\* If we were to hold otherwise, and find that admiralty jurisdiction was not proper, we shudder to think of the results. In our opinion the OCSLA would be expanded to cover a "penumbra" of activities that now clearly reside on the admiralty side of Federal court. We believe this "penumbra", if it were to be created, would reach far beyond the present scope of the statute and the Congressional intent behind it.

*See also, Alaska Barite Co. v. Freighters, Inc.,* 54 F.R.D. 192, 194–5 (N.D.Cal.1972); *Willis v. Woodson Construction Co.* (W.D. La.1983), 593 F.Supp. 464 (W.D.La.1983) (Order granting Motion to Strike Jury Demand).

In conclusion, the plaintiff has made his designation properly under Rule 9(h) and the defendant is not entitled to a jury. Accordingly, plaintiff's Motion to Strike the Demand for a Jury from defendant's answer is GRANTED.