**Gwendolyn S. FOGLEMAN, et al.**

v.

**TIDEWATER BARGES, INC., et al.**

**Civ. A. No. 90–2500.**

United States District Court, E.D. Louisiana.

Aug. 22, 1990.

Lawrence D. Wiedemann and Karl Wiedemann, Wiedemann & Wiedemann, New Orleans, La., for plaintiffs.

Cliffe F. Laborde and Charles A. Cerise, Jr., Gelpi, Sullivan, Carroll & Laborde, New Orleans, La., for defendant, Tidewater Barges, Inc.

David L. Duplantier, Chevron U.S.A., Inc., New Orleans, La., for Chevron U.S.A., Inc., defendant.

## ORDER AND REASONS

MENTZ, District Judge.

This matter comes before the Court on the plaintiffs' motion to remand the case to the District Court for the Parish of Orleans. After reviewing the motion, memoranda of counsel, the record and the law, the Court grants the motion because the case is not a civil action over which this Court has subject matter jurisdiction.[1]

---

1. *See* 28 U.S.C. § 1447(c) which provides in pertinent part that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

## FACTS

On June 29, 1990, plaintiffs, Gwendolyn and Joseph Fogleman, filed suit against Tidewater Barges, Inc. ("Tidewater") and Chevron U.S.A., Inc. ("Chevron") in the Civil District Court for the Parish of Orleans, State of Louisiana, to recover damages for injuries sustained by Mr. Fogleman which were allegedly caused solely by the joint negligence of Tidewater and Chevron. At the time of his injury, Joseph Fogleman was employed by Bokenkamp Drilling Company, Inc. ("Bokenkamp") as a roustabout aboard a Chevron platform located in South Pass Block 78, an area of the Gulf of Mexico more than three miles off the coast of Louisiana.

On November 14, 1989, Fogleman was assigned to unload coiled tubing from the M/V FLOODTIDE II to the Chevron platform. Mr. Fogleman contends that he was injured during the unloading procedure when he slipped and fell on an accumulation of fish slime on the deck of the vessel. At the time of the accident, the M/V FLOODTIDE II was owned and operated by Tidewater, a Louisiana corporation. The plaintiffs are also Louisiana residents. Chevron is a corporation foreign to Louisiana, but registered to do and doing business in Louisiana.

The Foglemans alleged in their state court petition that the M/V FLOODTIDE II was in the joint control of Tidewater and Chevron, who shared the joint responsibility of determining when, and under what conditions the vessel would be loaded and unloaded, and when it would leave the dock or platform. According to the petition, the wind and sea conditions on the day of the accident were so hazardous that it was obvious, or by the exercise of reasonable care, should have been obvious that the work crew assigned to unload the coiled tubing could not accomplish the task safely. The Foglemans further alleged that Tidewater was negligent in allowing its crew members to throw their catch onto the deck of the vessel. The plaintiffs contended that the state court had jurisdiction over their action pursuant to the "saving to suitors clause" as provided in 28 U.S.C. § 1333(1).[2]

On or about June 29, 1990, Tidewater and Chevron were served with the plaintiffs' citation and petition for damages. Thereafter, on July 12, 1990, Tidewater and Chevron timely removed the case to this Court. Removal was based on the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–56 ("OCSLA").[3] Accordingly, Tidewater and Chevron claim to invoke the federal question subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331.[1] In the instant motion, the plaintiffs have moved to remand this case to the state court because their petition does not contain a claim under OCSLA.

## ANALYSIS

Tidewater and Chevron contend that the plaintiffs need not refer to OCSLA in their

---

**2.** The plaintiffs' petition actually cites to 28 U.S.C. § 1916. All parties agree that the plaintiffs intended to cite the saving clause found at 28 U.S.C. § 1333.

**3.** For purposes of this motion, defendants base removal jurisdiction on 43 U.S.C. § 1349(b) which gives the federal district courts original jurisdiction over OCSLA cases, and 43 U.S.C. § 1333(b), which makes the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50 ("LHWCA") applicable to claims for injuries occurring on the outer Continental Shelf outside the territorial waters of any state. § 1333(b) reads in pertinent part:

> With respect to disability or death of an employee resulting from any injury occurring as the result of operations, conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or trans-

porting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act.

**4.** 28 U.S.C. § 1331 reads:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

For purposes of removal jurisdiction and actions removable under federal question generally, *see* 28 U.S.C. § 1441(b), which reads in pertinent part:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

state court petition for OCSLA jurisdiction to exist as a basis for removal. Defendants argue that while generally plaintiffs are the masters of their claims, they may not avoid federal court jurisdiction through artful pleading. *See* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3722 at n. 60 (1985 & Supp. 1990).[5] The defendants assert that the Foglemans have alleged sufficient facts in their state court petition to permit removal under OCSLA.

### Overlapping OCSLA and Admiralty Jurisdiction

Relying on the "but for" test,[6] defendants contend that Fogleman would not have been injured while unloading the coiled tubing from the M/V FLOODTIDE II but for his employment connection to the platform. *See e.g., Recar v. CNG Producing Company*, 853 F.2d 367 (5th Cir.1988). In *Recar*, a maintenance crew foreman was injured while using a swing rope to transfer from a platform to a vessel. During the transfer, the swing rope broke and Recar fell to the deck of the vessel where he allegedly injured his neck. Recar filed suit in federal court against the platform owner alleging jurisdiction under OCSLA. At a pretrial conference, the district court determined that its only basis for subject matter jurisdiction was in admiralty. Despite being given a chance to amend his complaint, Recar declined to do so. The district court then dismissed the action without prejudice and Recar appealed from that order. On appeal, the defendant argued that OCSLA did not provide the district court with jurisdiction because of the maritime flavor of the case. The defendant pointed out that Recar actually spent most of his time working from a vessel, and that his injuries were sustained while he was trying to board the vessel. The Fifth Circuit Court of Appeals reversed, finding that Recar had alleged facts sufficient to bring his case within the provisions of OCSLA. *Id.* at 369. The circuit court held that regardless of the maritime flavor of the case, the district court may well have both admiralty jurisdiction under the general maritime law and federal question jurisdiction by virtue of OCSLA. *Id.* However, the court noted that "where admiralty and OCSLA jurisdiction overlap, the case is governed by *admiralty law.*"

---

5. In *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983), the Supreme Court stated:

> Although we have often repeated that "the party who brings the suit is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22 [33 S.Ct. 410, 57 L.Ed. 716] (1913), it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint, *see Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 376 F.2d 337, 339–40 (6th Cir.1967), *aff'd* 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968).

The defendants in the present motion rely on this independent corollary of the well-pleaded complaint rule. Specifically, they cite to another judge of this District:

> The plaintiffs need not assert a claim under OCSLA in their state court petition for OCSLA to apply because the law to be applied is exclusively federal.

*Cahee v. Shell Offshore, Inc.*, No. 90–0814, 1990 WL 98864 (E.D.La. July 6, 1990) (citing *White v. Chevron U.S.A., Inc.*, No. 90–0113, 1990 WL 28167 (E.D.La. March 14, 1990). In both these cases the court found that the state court petition pled enough facts to satisfy the "but for" test and come within the scope of OCSLA. *See infra* at n. 6. However, unlike the instant case, both of these cases involved allegations of state law negligence, not general maritime law negligence. Also, neither petition asserted jurisdiction in the state court pursuant to the savings to suitors clause. *See infra* at n. 12.

6. The test of coverage under OCSLA, which makes the LHWCA applicable to injuries or death occurring beyond state territorial limits, is

> ... whether the particular injury occurred in connection with operations on the outer Continental Shelf, and whether the offshore operations were a "but for" cause of the injury. If the test is satisfied in the sense that the injury or death would not have occurred but for the extractive activities on the outer continental shelf, the worker is covered under the Longshore Act whether the injury occurred on the fixed platform or in navigable waters, such as a helicopter crash transporting workers to or from a drilling platform.

Schoenbaum, *Admiralty and Maritime Law* § 6–3 (1987 & Supp.1989) (citing *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 340 (5th Cir.1982); *Herb's Welding v. Gray*, 766 F.2d 898 (5th Cir.1985).

*Id.* at 369–70 (quoting *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (5th Cir.1985) (emphasis supplied)). Finally, the court stated that, for purposes of the appeal, it had not been called upon to decide which body of law applied to the case. Rather, it would be up to the district court to determine on remand whether the "wrong" alleged bore a sufficiently strong relationship to traditional maritime activity to characterize it as a maritime tort, thereby requiring the application of general maritime law. *Id.* at 370 (citing *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253–60, 93 S.Ct. 493, 497–500, 34 L.Ed.2d 454 (1972); *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 1836, 23 L.Ed.2d 360 (1969); *Smith v. Pan Air Corp.*, 684 F.2d 1102, 1109–10 (5th Cir. 1982); *Laredo*, 754 F.2d at 1229.

Two cases cited by the parties to the present motion deal with the specific problem of the right to a jury trial when a claim for injuries has both OCSLA and admiralty implications. Both involve injuries to offshore workers incurred while they were in the process of unloading a vessel adjacent to a platform. In *Stevenson v. Point Marine, Inc.*, 697 F.Supp. 285 (E.D.La.1988), cited by the defendants in the present motion, the plaintiff was injured when a wave washed over the stern of the vessel causing the cargo to shift. The plaintiff sued the vessel owner in federal court for negligence under OCSLA. The plaintiff maintained that he had a right to a jury trial by virtue of the court's federal question jurisdiction.

The court found that the plaintiff's injury would not have occurred but for the offshore drilling activities. *Id.* at 287 (citing *Recar*, 853 F.2d at 369). Because the accident occurred outside the territorial limits of a state, the court found that the Longshoremen's and Harbor Workers' Compensation Act applied as the borrowed substantive law under OCSLA, and that the plaintiff was relegated to a claim under section 905(b) against the vessel owner. *Id.* A section 905(b) claim is generally cognizable only in admiralty. *Id.* at 286 (citing *Russell v. Atlantic & Gulf Steve-*

*dores*, 625 F.2d 71, 72 (5th Cir.1980)). The court held that OCSLA's adoption of section 905(b) did not spontaneously create a new statutory right of action against negligent vessel owners, it merely limited such actions, as does the LHWCA in claims by longshoremen against vessels. As a result, since OCSLA created no substantive right against vessel owners "under the Act," and since a 905(b) action is only cognizable in admiralty, the motion to strike the jury was granted. *Id.* at 288.

The district court in *Stevenson* adhered to *Recar* in two important respects: (1) the *OCSLA claim* filed by the plaintiff *in federal court* alleged sufficient facts under the "but for" test to come within the scope of OCSLA; and (2) where admiralty jurisdiction and OCSLA jurisdiction overlap, the case is governed by admiralty law. With respect to this latter consideration, the jurisdictional overlap occurred when Stevenson made a claim involving a vessel. Although he asserted OCSLA as the basis of jurisdiction, section 905(b) had to be applied as borrowed substantive law. Since a 905(b) claim is cognizable only in admiralty, and admiralty governs where jurisdiction is concurrent with OCSLA, the court found that Stevenson was not entitled to a jury.

The plaintiffs also cite a case involving a motion to strike the jury. In *Hails v. Atlantic Richfield Co.*, 595 F.Supp. 948 (W.D. La.1984), the plaintiff, a platform worker, was injured while aiding in the unloading of a vessel. He filed suit against the platform owner under OCSLA and general maritime law, and against the vessel owner and crane operator under general maritime law. The plaintiff designated his claim as one in admiralty under Rule 9(h) without benefit of trial by jury. Despite the plaintiff's Rule 9(h) designation, the platform owner requested a trial by jury, claiming that its status as a platform owner exempted it from admiralty jurisdiction, leaving only jurisdiction under OCSLA. *Id.* at 949. The district court disagreed. The court found that because the accident occurred on a vessel, maritime jurisdiction would be appropriate if it could be determined that the case met the requirements necessary

for such jurisdiction. Citing the test under *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972),[7] the court found that the facts alleged gave rise to admiralty jurisdiction. *Hails*, 595 F.Supp. at 950 (citations omitted). The plaintiff was injured on navigable waters while performing the traditional activity of unloading a vessel. In addition, the court found admiralty jurisdiction to exist as to the platform owner as well as the other defendants because the plaintiff was unloading the vessel at the request and for the benefit of the platform owner. *Id.*[8] The court went on to note that, for jurisdictional purposes, "a tort occurs where the *impact* of the act or omission produces injury." *Id.* (citing *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe*, 434 F.Supp. 920, 927 (E.D.La. 1977) (other citations omitted) (emphasis in original)). And, unless a platform worker were on a vessel fortuitously when injured,[9] jurisdiction would be presumptively maritime. *See id.* at 951. The court then concluded that Hails was not fortuitously on the vessel because he was sent there by the platform owner to unload the vessel. *Id.*

Finally, the court noted the policy implications inherent in a Rule 9(h) designation. Once the pleadings show that admiralty jurisdiction exists, Rule 9(h) allows the plaintiff to preserve the unique rules, remedies and procedure of admiralty, including the nonjury trial, despite the existence of some other basis of jurisdiction.[10] *Id.* (citing *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir.1975)). The court held as a matter of law that the facts alleged by Hails established admiralty jurisdiction. The court ruled, therefore, that regardless of the existence of some other additional basis of jurisdiction, Hails' election to proceed in admiralty was dispositive. *Id.* (citations omitted).

*Hails* is also consistent with *Recar*. The *Recar* court found that the plaintiff had alleged sufficient facts under the "but for" test to come within the scope of OCSLA. However, the *Recar* court also acknowledged that because the plaintiff's injury actually occurred *on the deck of the vessel*, the district court applying the *Executive Jet* test on remand might well conclude that admiralty jurisdiction *also existed*. *Recar*, 853 F.2d at 370. The *Recar* court also acknowledged that if, on remand, the district court were to make such a determination, and find that OCSLA and admiralty jurisdiction overlapped, *the case would be governed by maritime law*. *Id.* at 369 (emphasis added).

In each of these cases, the courts acknowledged that admiralty jurisdiction controls where OCSLA jurisdiction also exists. As in *Recar*, the *Stevenson* court found that the plaintiff had alleged facts sufficient to come within the scope of OCSLA. But, because the injury occurred on a vessel and the LHWCA was the substantive law to be applied, admiralty jurisdiction governed the claim against the vessel. Unlike *Recar*, the *Hails* court specifically found that admiralty jurisdiction existed over the defendants, making the existence of OCSLA jurisdiction irrelevant. The *Recar* court left that determination to the district court on remand. The additional distinction in *Hails*, for purposes of the instant motion, is the determination made by the court that a platform owner may be subject to admiralty jurisdiction when the injury occurs on a vessel while the platform worker is performing maritime tasks

---

7. Under the *Executive Jet* test, admiralty jurisdiction is present where the tort occurs on navigable waters and the wrong bears a significant relationship to traditional maritime activity. *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504.

8. The court stated:
   ... it is significant to us that plaintiff was performing these tasks at the request and for the benefit of defendant ARCO. It makes sense to us that if ARCO desires to obtain the benefits of production with the aid of maritime commercial endeavors, then it must accept the responsibility of appearing in admiralty court to answer for wrongs and injustices arising from those endeavors.
   *Hails*, 595 F.Supp. at 950.

9. *See Smith v. Pan Air Corp.*, 684 F.2d at 1111.

10. That other basis of jurisdiction is most commonly diversity or federal question jurisdiction. *Hails*, 595 F.Supp. at 951.

at the request and for the benefit of the platform owner.

In the present motion to remand, both parties urge this Court to adopt the analyses of these cases for the wrong reasons. *Recar, Stevenson,* and *Hails* all involved cases that had been filed in federal court. In each case, the court was deciding the effect of the plaintiff's choice of OCSLA and/or general maritime law in the federal forum. In each case, the court acknowledged that admiralty jurisdiction, with its consequent remedies and procedures, controlled where admiralty and OCSLA jurisdiction overlapped. However, *neither of these three cases deals with how the results of overlapping OCSLA and admiralty jurisdiction affect removal jurisdiction and the saving to suitors clause.* Because of the unique procedural and historical problems attendant to the removal of saving to suitors cases, the Court must apply the reasoning of these previously discussed cases with great care.

### Removal Jurisdiction and the Saving to Suitors Clause

■ The Fifth Circuit Court of Appeals has recognized the uncertainty surrounding the apparent conflict between the removal statute [11] and the saving to suitors clause.[12] *Vatican Shrimp Company, Inc. v. Solis,* 820 F.2d 674, 680 (5th Cir.1987), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98

L.Ed.2d 371 (1987).[13] The conflict exists because of the difficulty applying the removal statute, 28 U.S.C. § 1441, in maritime cases filed in state court where the plaintiff has invoked the saving to suitors clause, 28 U.S.C. § 1333(1). The removal statute allows a defendant or defendants to remove a case to federal court if that case could have been brought in federal court originally. If the plaintiff asserts claims under federal law original jurisdiction exists and citizenship of the parties is irrelevant.[14] Original jurisdiction also exists if the parties are diverse.[15] However, when a plaintiff files a maritime action in state court under the saving to suitors clause, that statute preserves the plaintiff's right to common law remedies, typically any state law remedies that might be available.[16]

■■ In *Romero v. International Terminal Operating Company,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1958), the Supreme Court held that maritime actions arising under the general maritime law are not claims that arise under the "Constitution, treaties, or laws of the United States" for purposes of invoking federal question jurisdiction.[17] Were this not the case, an expanded view of § 1331 would eliminate the "historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal . . . since saving

---

11. 28 U.S.C. § 1441.

12. 28 U.S.C. § 1333 reads in pertinent part:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
28 U.S.C. § 1333(1).

13. *See generally* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3674 (1985 & Supp.1990); Schoenbaum, *Admiralty and Maritime Law* § 3-13 (1985 & Supp.1989). Both these treatises discuss the problems inherent in the conflict between the removal provisions and the long recognized practice of preserving to maritime suitors their common law remedies.

14. *See* 28 U.S.C. § 1331.

15. *See* 28 U.S.C. § 1332.

16. The common law remedy is available "in all cases where the common law is competent to give it." Schoenbaum, *supra* at note 13 (citing *Leon v. Galceran,* 78 U.S. (Wall.) 185, 191, 20 L.Ed. 74 (1871)).

17. *See* 28 U.S.C. § 1441(b). The Supreme Court stated:
Of course all cases to which "judicial power" extends "arise," in a comprehensive, non-jurisdictional sense of the term, "under this Constitution." It is the Constitution that is the ultimate source of all "Judicial Power"—defines grants and implies limits—and so "all Cases of admiralty and maritime Jurisdiction" arise under the Constitution in the sense that they have constitutional sanction. But they are not "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States. . . .
*Romero,* 358 U.S. at 368, 79 S.Ct. at 478.

clause actions would then be freely removable." *Id.* at 371–72, 79 S.Ct. at 480. However, removal of saving to suitors cases on the basis of diversity is specifically allowed under *Romero*. *Id.* at 376–77, 79 S.Ct. at 482. The distinction is clear and widely recognized by both the courts and commentators.[18] The saving to suitors clause is intended to preserve the common law remedy, not to guarantee the plaintiff a non-federal forum. *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. Unit A June 1981). In essence, removal of a saving to suitors case on the basis of diversity, while defeating the plaintiff's choice of forum, does not change the character of the claim. The common law remedy is preserved, along with the right to a jury trial. Schoenbaum, *Admiralty and Maritime Law* § 3–13 at p. 118 and n. 11. Conversely, removal on the basis of federal question jurisdiction necessarily changes the character of the claim. In federal question cases, removal jurisdiction is premised on the substantive law to be applied, *i.e.* the remedy. A noted treatise has suggested a solution to this problem:

> The preferable conclusion from a policy perspective, and the one that seems most consistent with what appears to be the law, is to permit removal of admiralty and maritime actions only when they would be removable on some basis *other than their maritime or admiralty nature*. This would permit removal of a case that otherwise would be removable as a diversity case, or because the United States or one of its officers is named as a defendant, or because the action could be removed as a federal question case *for reasons other than its maritime character*.

**18.** Schoenbaum, *supra* at p. 118 n. 10 and cases cited therein; C. Wright, A. Miller & E. Cooper, *supra* at p. 465 nn. 24 and 25 and cases cited therein.

**19.** *Coody* is a case both factually and legally similar to the present case. The plaintiff, a platform worker, was injured while being transferred from a platform to a vessel. He and his wife filed suit in state court, and the defendants timely removed the case. The defendants claimed that the federal court had subject matter jurisdiction pursuant to OCSLA. Thereafter, the plaintiffs filed a motion to remand based

C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3674, p. 466 (1985) (emphasis supplied).

■ The defendant would have this Court focus on the last phrase of the quoted section and determine that since the plaintiff in his state court petition has pled enough facts to satisfy the "but for" test under the OCSLA cases discussed previously, the instant matter should be removable as "a federal question case for reasons other than its maritime character." However, it is immaterial that the plaintiff could have asserted a federal claim under OCSLA. *Coody v. Exxon Corp.*, 630 F.Supp. 202, 205 (M.D.La.1986).[19] The plaintiff did not elect to proceed under OCSLA. Therefore, as the cases discussed earlier make clear, even if the facts alleged in the state court petition were to satisfy the "but for" test, admiralty jurisdiction would govern the case as long as the *Executive Jet* test is concurrently met.

■ The Court finds that the facts as alleged do satisfy that test. Mr. Fogleman was injured while on board and unloading a vessel. Furthermore, he was undertaking this traditional maritime task at the request and for the benefit of Chevron. Diversity jurisdiction does not exist in the case, and Mr. Fogleman has invoked his right to proceed at law under the saving to suitors clause. The only possible federal question jurisdiction, and the basis upon which the defendants would have this Court exercise jurisdiction is under OCSLA. However, where the *Executive Jet* test is satisfied, as in the instant case, OCSLA cannot be a basis for federal question removal because the case necessarily

upon the fact that they had not asserted a claim under OCSLA in their state court petition. Furthermore, plaintiffs contended that their case was premised upon general maritime law and sanctioned as a state court action by the saving to suitors clause, 28 U.S.C. § 1333(1). Therefore, since the parties were not diverse, the court granted the motion and remanded the case to the state court. *See also Holcomb v. ERA Helicopters, Inc.*, 618 F.Supp. 339 (W.D.La. 1985); *Peters v. Pumpkin Air, Inc.*, 635 F.Supp. 825 (M.D.La.1986).

has a maritime character. *See* Wright, Miller & Cooper, *supra* at p. 466. Therefore, we must hold that when a plaintiff elects to proceed under the saving to suitors clause and he is able to plead facts sufficient to meet the *Executive Jet* test for admiralty jurisdiction, the mere fact that he may also have asserted a claim under OCSLA will not vest the court with federal question jurisdiction. In such a case, removal is possible only if diversity exists.[20]

Accordingly,

IT IS ORDERED that the plaintiffs' motion is GRANTED and this matter is hereby REMANDED to the Civil District Court, Parish of Orleans, State of Louisiana, and the hearing which had been set in this matter for August 15, 1990 is CANCELLED.

---

**20.** The exercise of diversity jurisdiction is not without its problems. In a Louisiana state court petition, for example, the plaintiff may not plead a specific amount of damages in personal injury cases. Therefore, a plaintiff may defeat removal by asserting, after the case has been removed, that the damages do not meet the jurisdictional amount requirement. In such a case, the defendant may counter a motion to remand only if he establishes to a legal certainty that the plaintiff would recover more than the jurisdictional amount. *Kliebert v. Upjohn Co.,* 906 F.2d 154 (5th Cir.1990). This result is disturbing given that a state court jury could subsequently award the remanded plaintiff more than the jurisdictional amount.