## TENNESSEE GAS PIPELINE CO.
### v.
## HOUSTON CASUALTY CO.

No. 95–0143.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

March 31, 1995.

---

James B. Doyle, Sr., Robert W. Fenet, Woodley, Williams, Fenet, Boundreau & Brown, Lake Charles, for plaintiff.

Cliffe E. Laborde, III, Susan S. Robinson, Laborde & Neuner, Lafayette, for defendant.

### *MEMORANDUM RULING*

TRIMBLE, District Judge.

Presently before the Court is a "Motion to Remand" filed by Tennessee Gas Pipeline Co. The Magistrate Judge has previously filed a Report and Recommendation recommending the motion be granted. For the following reasons this Court denies the motion. However, because this denial rests upon a close question of law, this court will grant the parties the option to pursue an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

Tennessee Gas Pipeline Co. (TGP) owned and operated a fixed platform on the Outer Continental Shelf approximately 35 miles off the coast of Louisiana. In September, 1992, a barge in the tow of the tug M/V Gulf Miss allided with the platform "substantially destroying it and disrupting its operation for a considerable length of time."[1] Houston Casualty Company is an insurer of the several corporations which owned, operated, or chartered the M/V Gulf Miss.

---

1. Tennessee Gas Pipeline's "Petition for Damages," paragraph VII.

248

TGP filed a suit against Houston Casualty Company (Houston) in Louisiana state court pursuant to Louisiana's direct action statute, La.R.S. 22:655 (DAS). To support its utilization of the direct action, TGP has averred that the policy of insurance was actually or constructively delivered in the state of Louisiana, and that a portion of its damages occurred in Louisiana. TGP brought the claim pursuant to general maritime law, and designated it as a claim "saved to suitors," pursuant to the provisions of 28 U.S.C. § 1333.

Characterizing the claim as one arising under the laws of the United States over which this district court has original jurisdiction, Houston removed the action under 28 U.S.C. §§ 1331 and 1441(b).[2] The removal was predicated on the fact that the property damage to the fixed platform occurred on the Outer Continental Shelf (OCS), which, Houston avers, places the claim under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.*

### ANALYSIS

■ In the Motion to Remand, TGP argues that as master of its complaint, it chose to assert a claim only under general maritime law, and drew the complaint in a manner intended to avoid the creation of federal jurisdiction.[3] TGP further contends that the

nature of the cause of action is strictly maritime as it was an ocean-going barge in the tow of a vessel which caused the damage rather than an activity in connection with the operation of the platform. Houston argues that as TGP has sought relief under Louisiana state law (the direct action statute) for an accident occurring on the Outer Continental Shelf, the Outer Continental Shelf Lands Act (OCSLA) is necessarily invoked. Additionally, Houston asserts that the OCSLA is applicable according to its own terms to this claim involving damage to a fixed platform on the OCS which interrupted the mineral production therefrom.

■ Initially, the court would like to note that because the remand of a case (except a civil rights case) is not a reviewable order, a federal court should approach remand cautiously, lest it erroneously deprive a defendant of the right to a federal forum.[4]

■ Under the OCSLA, the law of the adjacent state is adopted as surrogate federal law on structures on the OCS to the extent it is applicable and not inconsistent with federal law.[5] *Continental Oil Co. v. London Steam–Ship Owners' Mutual Ins. Assoc.*, 417 F.2d 1030 (5th Cir.1969). Furthermore, the structures on the OCS are areas of exclusive federal jurisdiction. 43 U.S.C. § 1333(a)(1); *Continental Oil, supra.*

2. These sections provide in relevant part,
 28 U.S.C. § 1331:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 28 U.S.C. § 1441(b):
 Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

3. It is an established principle of law that "the party who brings the suit is the master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 23, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). The removal of federal question cases from state to federal court is governed by the well-pleaded complaint rule. Under this rule, a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96,

81 L.Ed. 70 (1936). An independent corollary of this rule is that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint through artful pleading. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

4. 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3721 (1985); 28 U.S.C. § 1447(d).

5. The OCSLA, in pertinent part provides:

 To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon. . . .

 43 U.S.C. § 1333(a)(2)(A).

■ Houston contends that when TGP filed a claim under the DAS, the OCSLA was silently implicated. In support of this argument Houston has placed much emphasis on the case of *Broussard v. John E. Graham & Sons,* 798 F.Supp. 370 (M.D.La.1992). In *Broussard,* a plaintiff had been injured while being transferred from a fixed platform on the OCS to a vessel. The plaintiffs filed suit in state court asserting claims of negligence and strict liability under Louisiana law. The defendants removed the action to federal court, and the plaintiffs moved to remand. The court held that because the plaintiffs had sought relief under Louisiana law, they had set forth a legal claim based on the OCSLA, giving the federal court jurisdiction. *Id.* at 372. The court reasoned that when a plaintiff asserts a claim for relief based on a state law for an accident arising on a fixed platform involved in mineral operations on the OCS, it is only through the provisions of the OCSLA that the state law is applicable. Thus, for jurisdictional purposes, the assertion of a state law claim is tantamount to invoking the OCSLA. The court went on to explain that though maritime law may ultimately be applicable to the case, that fact will not divest a federal court of subject matter jurisdiction where the plaintiff has asserted a claim which invokes the OCSLA. *Id.* at 373 (*citing Recar v. CNG Producing Co.,* 853 F.2d 367 (5th Cir.1988)).

A critical distinction between *Broussard* and the case at hand, however, is the particular state law claim asserted by Plaintiff. In *Broussard,* the plaintiffs had claimed relief under Louisiana strict liability and negligence theories. Here, the plaintiff has utilized the Louisiana DAS. In *Continental Oil Co. v. London Steam–Ship Owners' Mutual Assoc.,* 417 F.2d 1030 (5th Cir.1969), the Fifth Circuit concluded that the Louisiana DAS was not adopted as surrogate federal law under the OCSLA. As the DAS is not applicable as federal law under the OCSLA, the utilization of the DAS would invoke neither the OCSLA, nor federal court jurisdiction.

Houston's second argument provides a more pithy point to ponder, and constitutes the salient issue before the court. The question is whether the fact that an accident occurs on the OCS and involves damage to a fixed platform engaged in mineral operations will necessarily invoke the OCSLA and federal court jurisdiction even though general maritime law may be applicable to the claim.

Under the OCSLA district courts have original jurisdiction over

> cases and controversies arising out of, or in connection with any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals....

43 U.S.C. § 1349(b)(1)(A).

The OCSLA defines "production" as,

> those activities which take place after the successful completion of any means for the removal of minerals including such removal, field operations, transfer of minerals to shore, operation monitoring, maintenance, and work-over drilling.

43 U.S.C. § 1331(m).

■ Because this case is connected with an operation on the OCS involving the production of minerals, it is clear that had Plaintiff chosen to do so, it could have asserted a cause of action under the OCSLA. Nevertheless, the defendant may not base removal on an unasserted federal claim. *Coody v. Exxon Corp.,* 630 F.Supp. 202 (M.D.La.1986) (citing *Pan American Petroleum Corp. v. Superior Court of Delaware,* 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961)). Yet, claims asserted in state court, no matter how they are characterized by the plaintiff, are removable to federal court where the claims are necessarily federal in character by virtue of the clearly manifested intent of Congress. *Gilbreath v. Guadalupe Hospital Foundation Inc.,* 5 F.3d 785, 790 (5th Cir.1993) (citation, quotation omitted). Therefore, in passing on the propriety of removal, this court must examine whether Plaintiff's complaint raises issues intended by Congress to be within the jurisdictional scope of the OCSLA and the federal courts.

In *EP Operating Ltd. Partnership v. Placid Oil Co.,* 26 F.3d 563 (5th Cir.1994), the

Fifth Circuit expounded on Congress's intent as to the jurisdictional reach of the OCSLA.

> This body of substantive law identified in section 1333 was intended to govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf. Thus, the OCSLA casts a broad substantive net in section 1333. Further, we find that the most consistent reading of the statute instructs that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333. Accordingly, consistent with the breadth of the substantive reach of the OCSLA, we find that Congress intended for the judicial power of the United States to be extended to the entire range of legal disputes that it knew would arise relating to resource development on the Outer Continental Shelf.

*Id.* at 569 (citations, quotations, and footnotes omitted).

The case of *Amoco Production Co. v. Sea Robin Pipeline Co.,* 844 F.2d 1202 (5th Cir. 1988) provides useful instruction on the removal jurisdiction of the district court under the OCSLA. *Sea Robin* involved the removal of a suit filed in state court over a dispute concerning "take or pay" provisions in contracts for the sale/purchase of natural gas. On a motion to remand, the Fifth Circuit first considered how to construe the term "operation," as used in § 1349 and determined that it denoted physical acts undertaken on the OCS. *Id.* at 1207. The court then turned to whether there was "production" on the OCS within the intended scope of the OCSLA. After noting the migratory nature of non-solid minerals, and the fact that interruptions and changes in the rate of recovery may affect the overall amount recovered from a particular well, the court concluded,

> ... any dispute that alters the progress of production activities on the OCS threatens to impair the total recovery of the federally-owned minerals from the reservoir or reservoirs underlying the OCS. Such a dispute was intended by Congress to be

within the grant of federal jurisdiction contained in § 1349.

*Id.* at 1210.

As the court found the dispute would have consequences on the productivity of the well, it held that the controversy was within federal jurisdiction under the OCSLA and affirmed the district court's denial of the motion to remand. *Id.*

In *EP Operating, supra.,* the Fifth Circuit again considered whether there was an operation on the OCS involving the production of minerals, and whether the suit arose out of, or in connection with that operation. *EP Operating* involved a suit to partition an offshore platform and other offshore facilities on the OCS which were, at that time, not in use. The court rejected the notion that there is a temporal component to the jurisdictional test, and stated that the government's proprietary interest in the minerals on the OCS is implicated whether the effect on mineral production is immediate or long-term. *EP Operating,* 26 F.3d at 570, fn. 15. The court concluded that the action did fall under the jurisdictional aegis of the OCSLA as it was a dispute that would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources. *Id.* at 570; *See also United Offshore Co. v. Southern Deepwater Pipeline Co.,* 899 F.2d 405 (5th Cir. 1990).

 With that jurisprudential prelude, the question now to be answered is whether the face of Plaintiff's well-pleaded complaint raises issues which meet the jurisdictional test of the OCSLA set forth above.

The plaintiff's petition discloses that the fixed platform is located on the OCS, approximately 35 miles off the coast of Louisiana. This is a sufficient "physical act" to constitute an operation within the scope of the OCSLA. As this accident "substantially destroy(ed) (the platform) and disrupt(ed) its operation for a considerable length of time," [6] this court concludes that the instant action arises out of or is connected with the operation involving the production of minerals. Lastly, the plaintiff has alleged damages

---

**6.** Plaintiff's Petition for Damages, paragraph VII.

which reveal that the action is one which affects (or has affected) the efficient exploitation of resources from the OCS and/or threatens the total recovery of federally-owned resources. The plaintiff has averred that it was prevented from accumulating, acquiring, and collecting revenues for the transportation of natural gas through its pipeline;[7] that it suffered damages for loss of use due to inability to recognize transportation revenues; that it suffered damages in the nature of loss of future income as a result of the loss of another well which was tied to the TGP platform; and finally, that it suffered damages due to loss of, reconstruction of, and repairs to the platform.[8] These alleged damages illustrate that the federal interest in mineral operations on the OCS has been implicated, and original jurisdiction under the OCSLA is demonstrated on the face of the petition.

 The plaintiff has argued that general maritime law, not the OCSLA, is applicable to this claim, as the damage to the platform resulted from the inattentiveness of the helmsman of a vessel. The plaintiff has cited the case of *Fogleman v. Tidewater Barges, Inc.*, 747 F.Supp. 348 (E.D.La.1990) in support of this argument. In *Fogleman*, the plaintiff had been injured on a vessel while unloading coiled tubing from the vessel to a platform. The plaintiff filed suit in state court under the "savings to suitors" clause, and defendant removed the action to federal court. On a motion to remand, the court determined that although the plaintiff may have alleged facts sufficient to meet the "but for" test for jurisdiction under the OCSLA,[9] the dispute was governed by maritime law, and as such, the plaintiff's claim was "saved to suitors" and not removable. *Id.* at 355–356. The critical distinction between *Fogleman* and the case at hand is the nature of the action. While *Fogleman* involved a personal injury, the present action involves damage to facilities engaged in the production of minerals on the OCS which caused an interruption in that production. When that production was interrupted, the federal interest in minerals on the OCS was implicated, and original federal jurisdiction through the OCSLA was invoked.

 This court need not now decide whether general maritime law or the OCSLA is applicable to the claim. It may eventually be determined under the test of *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) that maritime law is applicable. Where OCSLA and general maritime jurisdiction are overlapping, maritime law controls. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir.1985). However, whether maritime law ultimately governs the action is irrelevant as to whether the OCSLA invests this court with original federal question jurisdiction. *Recar v. CNG Producing Co.*, 853 F.2d 367, 370 (5th Cir.1988); *Brous-*

---

7. The "transfer of minerals to shore" is an activity specifically subsumed under the definition of "production." 43 U.S.C. § 1331(m).

8. Plaintiff's Petition for Damages, paragraphs XV, XVI.

9. This "but for" test was originally articulated in *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 340 (5th Cir.1982), and can be summarized as, "Would plaintiff's injuries have occurred but for his/her activity in connection with, and in furtherance of mineral operations on the OCS?" The test is used to determine whether a particular injury is the result of operations on the OCS. *Herb's Welding v. Gray*, 766 F.2d 898 (5th Cir. 1985). The value of this test seems to be limited to personal injury cases, as this court has been cited to no case involving only property damage where the test was utilized. Also, the application of different tests to cases involving personal injury and those involving disputes affecting facilities on the OCS is supported by the fact that personal injury cases, unlike OCS platform cases, do not raise issues affecting federal sovereignty over the minerals of the OCS. It is this federal sovereignty which is protected by the OCSLA, and which demands that federal courts have jurisdiction over disputes which touch upon it. *Cf. EP Operating*, 26 F.3d at 569 ("After establishing that the law applicable to the subsoil and seabed of the OCS and to structures erected thereon is federal law, § 1333(a)(2)(A) then provides that all such applicable laws shall be administered and enforced by the appropriate officers and Courts of the United States."); *Sea Robin*, 844 F.2d at 1205–06 (The OCSLA extended the jurisdiction and control of the United States to the seabed and subsoil of the entire Outer Continental Shelf adjacent to the shores of the United States, and also to the structures thereon. It further asserted the sovereignty of the U.S. over the natural resources of the OCS vis-a-vis the governments of other countries and of the several states.).

*sard v. John E. Graham & Sons,* 798 F.Supp. 370 (M.D.La.1992).

## CONCLUSION

This court finds that the plaintiff's petition raises issues which implicate the federal interests set forth in the OCSLA, and intended by Congress to be within the broad substantive and jurisdictional net of the OCSLA.[10] The action was properly removed from state to federal court, therefore, the Motion to Remand is denied.

ACCORDINGLY,

IT SHALL BE ORDERED that the "Motion to Remand" be DENIED.

IT SHALL FURTHER BE ORDERED that Tennessee Gas Pipeline may apply for INTERLOCUTORY APPEAL to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b) as the denial of the Motion to Remand involves issues of law as to which there is substantial ground for difference of opinion.

## *ORDER*

For the reasons stated in the Memorandum Ruling of this date, and after a review of the record and arguments of the parties,

IT IS ORDERED that the Motion to Remand be DENIED.

IT IS FURTHER ORDERED that Tennessee Gas Pipeline may apply for INTERLOCUTORY APPEAL to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b) as the denial of the Motion to Remand involves issues of law as to which there is substantial ground for difference of opinion.

---

**10.** *See EP Operating,* 26 F.3d at 569.