Windell C. KIDD and Wilma J. Kidd, Individually, and as Representatives of the Estate of Edward Ray Kidd, Appellants,

v.

The BRENHAM STATE SCHOOL TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION and Eugene S. Davis, M.D., Appellees.

No. 14–01–00082–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 18, 2002.

Sam M. Yates, III, Houston, for appellants.

Bridget Lynn McKinley, Cherie Kay Batsel, Austin, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## OPINION

SCOTT BRISTER, Chief Justice.

Appellants Windell C. Kidd and Wilma J. Kidd, appearing individually and as representatives of the Estate of Edward Ray Kidd, brought medical negligence claims against appellees, the Brenham State School Texas Department of Mental Health and Mental Retardation and Eugene S. Davis, M.D. in connection with the death of their son, Edward. The trial judge granted motions to dismiss the Kidds' claims, inviting them to "take these up and let the Court of Appeals straighten me out if I'm wrong." Finding he was not, we affirm.

Edward Ray Kidd was institutionalized for most of his forty years, with a long medical history including blindness, profound mental retardation, severe speech impairment, generalized seizures, hemiparesis, neurological damage, and chronic constipation. On the morning of Friday, May 12, 1995, he was examined by the state school's physician, Dr. Eugene Davis, for an infected toe, a possible urinary tract infection, and an unexplained weight loss. Dr. Davis prescribed an antibiotic and ordered a urinalysis from a nearby lab. The lab later faxed the results back to Brenham State School, but no one saw the results until the following Monday because the fax room door was locked for the weekend. The lab results showed an excessively high level of glucose and trace levels of ketonuria, indicating a serious medical condition.

During his examination Dr. Davis also discovered signs of constipation, and ordered x-rays, a soap suds enema, and one

liter of Golytely. Kidd went to bed around 8:00 p.m. that evening, and was found in respiratory and cardiac distress during a 10:30 p.m. bed check. He was transported by ambulance to a nearby hospital, but did not respond to emergency treatment, and died shortly before midnight. The cause of death was later determined to be an uncommon form of diabetes.

The Kidds filed suit alleging the state school and Dr. Davis negligently used tangible personal property that proximately caused their son's death. Brenham State School filed a plea to the jurisdiction asserting governmental immunity. Davis filed a motion to dismiss because the Kidds' expert reports were untimely. The trial court granted both motions and dismissed the Kidds' suit. They appeal, asserting two points of error.

### Plea to the Jurisdiction

In their first point, the Kidds allege the trial court erred in granting the state school's plea to the jurisdiction. They assert governmental immunity is waived in this case because the Texas Tort Claims Act allows suits based on a negligent condition or use of tangible personal property. *See* TEX. CIV. PRAC. & REM.CODE § 101.021(2).

█ The construction and application of "tangible personal property" under section 101.021(2) has had a long and contentious history. *See University of Texas Medical Branch v. York,* 871 S.W.2d 175 (Tex.1994)(majority and dissenting opinions). Nonetheless, it is clear that there must be an actual use of some tangible property that actually causes an injury; mere non-use of property, or mere involvement in an incident, is not enough. *See*

*Texas Department of Criminal Justice v. Miller,* 51 S.W.3d 583, 588 (Tex.2001). We may consider both pleadings and evidence in determining whether the Kidds have stated a claim under the Tort Claims Act, *see id.* at 587, so we review both their pleadings and the expert reports presented at the hearing on the state school's plea.

█ Edward Kidd died from diabetes; none of the items alleged by the Kidds caused this condition.[1] The use of a fax machine in a locked room may have kept information from being used, but a failure to communicate is not a misuse of tangible property. *See University of Texas Medical Branch at Galveston v. Mullins,* 57 S.W.3d 653, 657 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (holding failure to inform plaintiff of positive HIV test result was not misuse of tangible property). Nor is it enough to show the non-use of tangible property (in this case insulin, or a telephone to get the results earlier). *See Miller,* 51 S.W.3d at 588. The Kidds' expert witness reports pointed to information that should have alerted medical personnel to their son's deteriorating condition and led to different treatment, but misdiagnosis or poor judgment is not a use of tangible property. *See id.* Finally, the items of tangible property that were used (the enema, Golytely, and tetracycline) may have been involved but did not cause Kidd's death. *See id.*

We hold the trial court properly granted Brenham State School's plea to the jurisdiction, and overrule appellants' first point of error.

### Dismissal for Failure to Timely File Expert Report

In their second point, the Kidds contend the trial court erred in granting Davis's

---

1. In their brief, appellants point to the fax machine, soap suds enema, Golytely, tetracycline, door locks, weight scales, telephone, and the room housing the fax machine as the tangible property used.

motion to dismiss. The Kidds filed suit on July 31, 1996; expert reports and resumes were due 180 days later on January 28, 1997. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d). Reports were not provided until March 27th and May 9th, 1997, and resumes not until four years after suit was filed.

Davis raised no complaint about the late filings until his motion to dismiss on September 13, 2000, approximately one month before trial. Before the hearing on that motion, the Kidds filed a motion requesting an extension to make their filing timely. *See id.*, § 13.01(g). Following a hearing, the trial court denied an extension and granted the motion to dismiss. We review for abuse of discretion. *American Transitional Care v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001).

Subsection 13.01(g) of art. 4590i provides that

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

■ The Kidds argue Davis could not have been prejudiced by the late filing of their expert reports, because they were in the hands of his counsel more than three years before trial. But the statute takes no account of prejudice. If the deadlines pass without a report being submitted, it is no excuse that the health care provider knew perfectly well what the experts would say.

■ The Kidds also argue they could not request an extension until Davis moved to dismiss. But the statute says nothing of the kind. It is true a motion for extension is timely so long as it is filed before any hearing on the motion to dismiss. *See* § 13.01(g); *Pfeiffer v. Jacobs*, 29 S.W.3d 193, 197 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding 30–day grace period may be requested at any time before hearing on defendant's motion to dismiss). But as with the reports themselves, the deadlines do not prohibit earlier filings.

The deadlines in the statute are clear, and there is no question the Kidds did not timely file the reports. Thus, their only statutory recourse was an extension under section 13.01(g) for unintentionally missing the filing deadline. At the dismissal hearing in this case, the trial court repeatedly asked for such proof. Counsel for the Kidds admitted he was aware of the statutory deadlines, but testified as follows:

> [T]he ball was dropped in my office.... I could testify more clearly if this matter had been brought up three years ago where I could go back to my office and see exactly what happened. In three years the secretary, who was my paralegal doing most of my documents, she is no longer in my office so I can't really question her to exactly what happened, but it is clear that probably the ball was dropped, but it was not intentional. And, again, if we hadn't waited three years I could give this Court more clear answers.

He also speculated that "the only thing" he could think of is "I must have miscounted the days that I had to get them to them." No other explanation was tendered.[2]

 On this record, we cannot say the trial court abused its discretion. The statute places no deadline for a defendant's motion to dismiss; defendants apparently may wait for years, although they forfeit some of the cost-reduction protections of the statute by doing so. Conversely, the Kidds need not await a motion to dismiss before requesting a section 13.01(g) extension; when the Kidds' counsel filed these reports late, nothing prevented him from requesting the extension and proving the reasons at that time when his memory of the facts was fresher.

Trial courts are not required to grant a section 13.01(g) extension every time an attorney "drops the ball" or says he miscounted the days. In this case, one report was 58 days late, a second was 101 days late, and the resumes were over three years late. The trial court could have concluded this was more than a counting error. The order granting Davis's motion to dismiss was not an abuse of discretion, and the Kidds' second point of error is overruled.

The judgment is affirmed.

---

2. Contrary to appellants' statement in their brief, the record does not show any affidavits were filed in support of the motion for extension.