## MARINE TRANSPORT CORPORATION, Appellant,

v.

## THE METHODIST HOSPITAL; The Institute for Preventative Medicine/Methodist Healthcare Systems, The Methodist Hospital/Institute for Preventative Medicine Management, Inc. and Rashid Khan, Appellees.

### No. 01–04–00797–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 2006.

---

Jerry R. McKenney, James T. Brown, Legge Farrow Kimmitt McGrath & Brown, Houston, TX, for Appellant.

Daniel B. Shilliday, Nancy R. Kornegay, Vinson & Elkins LLP, Stephen J. Calvert, Susannah Elizabeth Biles, T. Marc Calvert, Calvert & Associates, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices JENNINGS and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Appellant, Marine Transport Corporation (Marine), appeals from two motions to dismiss granted in favor of appellees, The Methodist Hospital, the Institute for Preventative Medicine/Methodist Health Care Systems, the Methodist Hospital/Institute for Preventative Medicine Management, Inc. (collectively, Methodist) and Rashid Khan, M.D. Marine contends in its first issue that the trial court erred in granting the motions to dismiss by treating its federal maritime law claims as health care liability claims and by applying former article 4590i of the Revised Civil Statutes (former article 4590i)[1] to its case. Marine

---

1. *See generally* Tex.Rev.Civ. Stat. Ann. art. 4590i (Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01, 1977 Tex. Gen. Laws 2039–53, *repealed by* Act of June 2, 2003, 78th

alternatively contends in its second issue that the trial court erred by granting the motions to dismiss because the trial court abused its discretion by denying Marine's motion to extend time to file expert reports in compliance with former article 4590i. We conclude that although Marine's maintenance and cure claim arises out of federal maritime law, former article 4590i applies to Marine's underlying state-law negligence claims against Methodist and Dr. Khan. Thus, Marine was required to comply with the expert report filing requirements under former article 4590i. However, we also conclude that the trial court abused its discretion by not granting Marine a 30–day extension pursuant to section 13.01(g) of former article 4590i to file its expert reports due to mistake or accident. We thus reverse the judgment of the trial court and remand this case to the trial court for proceedings consistent with this opinion.

## Background

Dr. Khan examined Richard Guillory, a member of the Seafarers International Union (SIU), at Methodist for determination of his fitness for duty as a merchant seaman on oceangoing vessels pursuant to a Health Facility Provider Agreement (the Agreement) entered between the Seafarers Welfare Union on behalf of SIU employees and Methodist. The examination revealed an elevated white blood cell count and positive testing for syphilis, but Guillory was pronounced fit for duty and referred to the City of Houston, Health and Human Services Department (HHS), for treatment. After receiving treatment at HHS, Guillory returned to Methodist for rescreening. Despite an elevated white blood cell count and other abnormalities, Dr. Khan pronounced Guillory fit for duty, and Guillory embarked aboard the ship *M/V Patriot* (*Patriot*) for oceangoing sea duty as an employee of Marine.

While aboard *Patriot*, Guillory began experiencing severe pain, was evacuated, and subsequently was diagnosed with a massive chronic bacterial infection of the kidneys. Guillory eventually died as a result of the infection. Because Guillory's illness manifested itself while on board *Patriot*, Marine was responsible for the costs of Guillory's medical care under the maritime doctrine of maintenance and cure.

In its first amended petition, Marine sought damages resulting from Methodist's and Dr. Khan's alleged negligence in improperly pronouncing that Guillory was fit for duty from Methodist, Dr. Khan, and others or, alternatively, contribution for the sums expended by Marine pursuant to the doctrine of maintenance and cure. Methodist and Dr. Khan filed motions to dismiss Marine's action because its underlying claims were health care liability claims and Marine did not file an expert report within 180 days of filing suit, as required by former article 4590i. After Methodist filed its motion to dismiss, Marine filed a notice of filing expert reports pursuant to former article 4590i and motion to extend time to file the reports. The trial court denied Marine's motion to extend time to file reports and granted the motions to dismiss.

## Applicability of Former Article 4590i

In its first issue, Marine contends that because Guillory was injured while at sea,

Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884) (repealing entirety of article 4590i) (current version at Tex. Civ. Prac & Rem.Code Ann. §§ 74.001–.507 (Vernon 2005)); *see also Garland Cmty. Hosp. v. Rose*,

156 S.W.3d 541, 542 n. 2 (Tex.2004) (noting codification of former article 4590i and codification of House Bill 4 at Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–.507).

(1) maritime law applies to this case, (2) federal law for indemnity and contribution applies in lieu of state law and former article 4590i is thus inapplicable to this case, and (3) even if state law applies to this case, former article 4590i is inapplicable because Methodist and Dr. Khan "did not treat the decedent, no physician-patient relationship existed between them, and [Marine's] claim arises under the federal maritime law and not out of any treatment by [Methodist and Dr. Khan]." Methodist and Dr. Khan contend that Marine's "claims arise from shore-based treatment and are state-law-governed claims."

## A. Applicability of State or Federal Law for Indemnity and Contribution

Methodist and Dr. Khan contend that because Guillory was examined ashore at Methodist Hospital, the alleged tort occurred ashore, and thus Marine's claims are governed by state law. Marine contends that the tort was maritime because it resulted from land-based negligence that caused damage to be suffered at sea, and thus Marine's claims are governed by federal maritime law.

■ To invoke federal admiralty jurisdiction over a tort claim, conditions of location and connection with maritime activity must be satisfied. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). In this case, we must first determine whether the tort occurred on navigable water. *Id.* "[A] tort occurs where the *impact* of the act or omission produces injury." *Hails v. Atl. Richfield Co.*, 595 F.Supp. 948, 950 (W.D.La.1984) (citing *Exec. Jet Aviation, Inc. v, City of Cleveland, OH*, 409 U.S. 249, 266, 93 S.Ct. 493, 503, 34 L.Ed.2d 454 (1972)) (emphasis in original); *see also Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 128–29 (5th Cir.1988) (holding that party may satisfy locality test when negligence occurred on land if injury occurred on navigable waters). "Thus, where a force giving rise to an injury on the waters originates on land, the tort is maritime." *Hails*, 595 F.Supp. at 950. The fact that Guillory's injury might have been caused by land-based medical negligence does not, therefore, change the maritime nature of Marine's claim. *Id.* Although Guillory was declared fit for sea duty when he was on land, we conclude that the impact of this declaration produced injury on navigable water, i.e., Guillory fell ill while at sea, was unable to complete his duties, and his illness caused Marine to incur the expenses of Guillory's medical treatment.

■ Whether a tort occurred on navigable waters, however, does not end our inquiry. We must further determine "whether the tort has 'a potentially disruptive impact on maritime commerce'" and "whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to the traditional maritime activity.'" *Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048 (citing *Sisson v. Ruby*, 497 U.S. 358, 364–65 & n. 2, 110 S.Ct. 2892, 2896–97 & n. 2, 111 L.Ed.2d 292 (1990)). To do so, we must " 'assess the general features of the type of incident involved.'" *Id.* (quoting *Sisson*, 497 U.S. at 363, 110 S.Ct. at 2896). The relevant activity "is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Sisson*, 497 U.S. at 364, 110 S.Ct. at 2897. This test focuses on the "comparison of traditional maritime activity to the arguably maritime character of the tortfeasor's activity in a given case." *Grubart*, 513 U.S. at 542, 115 S.Ct. at 1052; *see also Seven Seas Fish Mkt., Inc. v. Koch Gathering Sys., Inc.*, 36 S.W.3d 683, 687 (Tex. App.-Corpus Christi 2001, pet. denied)

(holding that transportation of oil across land and non-navigable waters in pipeline that ruptured and caused oil to spill into navigable waters did not "bear a substantial relationship to traditional maritime activity").

The Fifth Circuit has held that "[a] ship is unseaworthy unless it and all of its appurtenances and crew are reasonably fit and safe for their intended purpose." *Miles v. Melrose*, 882 F.2d 976, 981 (5th Cir.1989). "Just as a dangerous mast, a defective line, or a damaged hull may render a vessel unseaworthy, so may a seaman who is not reasonably fit." *Id.* In *Miles*, a seaman's union referred a seaman to a ship for service despite its knowledge that the seaman was dangerous, and the seaman subsequently attacked and murdered another seaman. *Id.* at 981, 992. The Fifth Circuit held that the union's tort was significantly related to maritime activity because "[t]he injury occurred to a seaman on a vessel at sea" and "[t]he functions and roles of all the parties [were] inextricably tied to the maritime industry." *Id.* at 991. Additionally, because the plaintiff's claim that the vessel was unseaworthy was unique to maritime law, the tort was within admiralty jurisdiction. *Id.*

 In this case, Marine alleges that Methodist and Dr. Khan negligently declared an unfit seaman as fit for duty, thus causing Marine to incur expenses for the seaman's maintenance and cure, a purely maritime law claim.[2] As set forth above, Guillory's injury manifested itself while he was at sea, when he fell ill. Further, the functions and roles of the parties are "inextricably tied to the maritime industry": Guillory was a seaman employed on a vessel; Marine is the vessel owner; and Methodist and Dr. Khan were medical health care professionals hired pursuant to a contract with the seaman's union, SIU, to certify seamen as fit for duty on seagoing vessels. *See id.* We conclude that certifying an unfit seaman as fit for duty, who is employed by a shipowner as a result of that certification, may render a vessel unseaworthy, and thus certification of an unfit seaman has a potentially disruptive impact on maritime commerce. *See id.; see also Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048 (citing *Sisson*, 497 U.S. at 364–65 & n. 2, 110 S.Ct. at 2896–97 & n. 2). We further conclude that the general character of certifying seamen for duty substantially relates to a traditional maritime activity. *See Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048 (citing *Sisson*, 497 U.S. at 364–65 & n. 2, 110 S.Ct. at 2896–97 & n. 2). Therefore, Marine's claims are governed by federal maritime law.

## B. 4590i

Marine contends that a claim for reimbursement for maintenance and cure is a separate and distinct cause of action from the employee's claim against the third-party tortfeasor and that as a result, federal law alone governs Marine's claims, despite any state law claims that Guillory's estate or family may have against Methodist and Dr. Khan for medical negligence. Marine further contends that "the substantive and legal rights asserted in this action are governed by the maritime doctrine of cure, federal case law governing comparative fault, contribution and indemnity, and the Jones Act." Methodist and Dr. Khan contend that "admiralty law supplants state law only if there is a direct conflict between the two" and that because "both health care and medical negligence are defined and interpreted under state law," former article 4590i governs Marine's claims.

2. *See infra,* page 147.

■ We first consider whether, as Marine contends, its claims are governed by the Jones Act, which provides a cause of action for maritime workers injured by an *employer's* negligence. *See* 46 U.S.C.S. § 688 (1987); *Offshore Pipelines, Inc. v. Schooley,* 984 S.W.2d 654, 657 (Tex.App.-Houston [1st Dist.] 1998, no pet.). The Jones Act applies to employees seeking damages from their maritime employers, not to maritime employers seeking damages from third-party tortfeasors. *See* 46 U.S.C.S. § 688. We conclude that because Marine, as Guillory's employer, is bringing a claim against Methodist and Dr. Khan, as third-party tortfeasors, the Jones Act does not apply in this case.

■ We next consider whether maintenance and cure and federal case law governing comparative fault, contribution and indemnity apply to this case. "Maintenance and cure entitles a seaman who is injured or becomes ill while in the service of a ship to food, lodging, and necessary medical services." [3] *Maritime Overseas Corp. v. Waiters,* 917 S.W.2d 17, 18 (Tex. 1996). The shipowner is liable to the seaman for maintenance and cure regardless of whether the shipowner was at fault or the ship unseaworthy. *Id.* A shipowner required to pay maintenance and cure may recover, through indemnity or contribution, those expenses from a third party who caused the seaman's injury in whole or in part. *Liberty Seafood, Inc. v. Herndon Marine Prods., Inc.,* 38 F.3d 755, 757 (5th Cir.1994). We thus conclude that federal law governing maintenance and cure and contribution and indemnity does apply in this case.

■ Federal law provides that a party asserting an admiralty action may bring the action in state court. *See* 28 U.S.C.S. § 1333(1) (20060); *Offshore Pipelines,* 984 S.W.2d at 657. When a state court hears an admiralty case, that court occupies essentially the same position occupied by a federal court sitting in diversity: the state court must apply substantive federal maritime law but follow state procedure. *Offshore Pipelines,* 984 S.W.2d at 657 (citing *Texaco Ref. & Mkt, Inc. v. Estate of Dau Van Tran,* 808 S.W.2d 61, 64 (Tex.1991)).

■ State law may supplement federal maritime policies, unless a state law "deprive[s] a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretive decisions of [the United States Supreme] Court." *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 409–10, 74 S.Ct. 202, 205, 98 L.Ed. 143 (1953); *Stier v. Reading & Bates Corp.,* 992 S.W.2d 423, 430 (Tex.1999). "The exercise of admiralty jurisdiction, however, 'does not result in automatic displacement of state law.'" *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 206, 116 S.Ct. 619, 623, 133 L.Ed.2d 578 (1996). Specifically, when Congress has not prescribed, and federal maritime law does not set forth, a remedy for a specific cause of action in a maritime case, state statutes may apply to supplement federal maritime law. *See Yamaha,* 516 U.S. at 215–16, 116 S.Ct. at 628 (holding damages for wrongful death claim properly governed by state law because Congress had not prescribed remedies for wrongful deaths of nonseafarers in

---

**3.** Except for willful misconduct, the employee's negligence has no effect on his entitlement to maintenance and cure. *Savoie v. Lafourche Boat Rentals, Inc.,* 627 F.2d 722, 724 (5th Cir.1980). Marine and Dr. Khan contend that Guillory concealed from Marine that Methodist and Dr. Khan told Guillory that he was not fit for duty before Guillory boarded *Patriot.* This issue, having been presented for the first time on appeal is, however, waived. Tex.R.App. P. 33.1(a).

navigable waters); *Pope & Talbot,* 346 U.S. at 409–10, 74 S.Ct. at 205.

■ As set forth above, to recover damages for maintenance and cure from a third-party tortfeasor, the shipowner must show that the third party caused injury to the seaman. *Liberty Seafood,* 38 F.3d at 757. To do so in this case, Marine must thus prove that Methodist and Dr. Khan caused Guillory's injury. Marine's first amended petition, the live pleading in this case, asserts that Methodist and Dr. Khan violated duties of care owed to Guillory "by failing to exercise ordinary care and diligence exercised by other physicians and health care providers in the same or similar circumstances and were negligent specifically in permitting Guillory to work aboard an oceangoing vessel in a medically remote environment while suffering from a massive and chronic kidney infection." Marine further alleged in its petition that Methodist and Dr. Khan

> were negligent jointly and severally in one or more of the following nonexclusive particulars which are pled in the alternative:
>
> a. Failure to properly compile and assess a medical history pertaining to Guillory so as to properly ascertain an appropriate treatment protocol;
>
> b. Failure to properly treat Guillory's infections;
>
> c. Failure to properly re-screen [sic] and further and properly assess Guillory's fitness for, duty at sea and in a medically remote environment;
>
> d. Failure to adequately assess Guillory's job description and work demands before authorizing his attendance to that work environment. [sic]
>
> e. Failure to deny fit for duty status to Guillory when he was medically unfit for sea duty.

We conclude that because Marine must show that Methodist and Dr. Khan caused Guillory's injury, Marine must prove up the underlying health care liability claim to recover damages for maintenance and cure through indemnity or contribution. Because the underlying health care liability claim is not governed by federal maritime law or statute, we further conclude that former article 4590i governs to supplement the federal maritime law.

■ Marine contends that former article 4590i is inapplicable to this case because Methodist and Dr. Khan did not "treat" Guillory and "no physician-patient relationship existed between them." We first address whether a physician-patient relationship was established between Guillory and Dr. Khan as a "plan" doctor under the Agreement, thus establishing that Dr. Khan owed Guillory a duty of reasonable care when he examined Guillory to determine his fitness for duty. We next address whether this dispute involves the appropriate standard of care owed to Guillory, thus bringing this claim within former article 4590i.

■ Marine correctly asserts that former article 4590i applies only when a contractual physician-patient relationship exists between the parties. *Almaguer v. Jenkins,* 9 S.W.3d 835, 838 (Tex.App.-San Antonio 1999, no pet.); *Wilson v. Winsett,* 828 S.W.2d 231, 232 (Tex.App.-Amarillo 1992, writ denied). Texas courts have recognized the existence of a duty only when the physician was party to a contract *for the benefit of* the patient or had taken an active step in treating the patient. *Wax v. Johnson,* 42 S.W.3d 168, 172 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (emphasis added). A third party may contract with a physician for a patient's benefit; thus, when "healthcare services are rendered on behalf of the patient and are done for the patient's benefit, a consensual

physician-patient relationship exists for the purpose of medical malpractice." *Dougherty v. Gifford,* 826 S.W.2d 668, 675 (Tex.App.-Texarkana 1992, no writ). Specifically, when a physician has an agreement with a patient's health care plan to provide medical care to the plan's patients, a physician-patient relationship exists between the physician and the patient. *Hand v. Tavera, M.D.,* 864 S.W.2d 678, 679 (Tex.App.-San Antonio 1993, no writ).

Here, the Agreement was entered between the Seafarers Welfare Plan, on behalf of SIU employees, and Methodist. Methodist subsequently contracted with Dr. Khan to provide medical care to the patients covered by the Agreement. The Agreement provides, as follows:

> This Health Facility Provider Agreement ... is entered into between the Seafarers Welfare Plan (hereinafter Payor) and ... [Methodist] (hereinafter Provider).
>
> In consideration of the mutual promises, covenants and the respective representations of the parties noted below, [Methodist] and the Seafarers Welfare Plan as purchaser of such services *on behalf of [SIU's] covered employees,* their dependents and retirees, (eligible individuals), agree to the following:
>
> *SECTION 1:* Description of Parties
>
> *1.01* Payor is a multi-employer trust fund.... Payor maintains *for the benefit of its covered employees,* their dependents and retirees a self-insured health care plan which is an "employee welfare benefit plan" as that term is defined by the Employment Retirement Income Security Act of 1974.

(Emphasis added).

As set forth above, a contract for health care services clearly existed between Methodist and Guillory, as an employee covered by SIU, which, by the express terms of the Agreement was entered on behalf of and for the benefit of Guillory. We thus conclude that a physician-patient relationship existed between Dr. Khan and Guillory because Dr. Khan had an agreement with Methodist, a party to the Agreement, to provide health care services on behalf of employees covered under the Agreement. *See Wax,* 42 S.W.3d at 172; *Hand,* 864 S.W.2d at 679.

■ Former article 4590i governs health care liability claims filed in Texas before September 2003. *See* Tex. Civ. Prac. & Rem.Code Ann. ch. 74 (Vernon 2005 & Supp.2005). "To determine whether a cause of action is a health care liability claim that falls under the rubric of [former article 4590i], we examine the underlying nature of the claim and are not bound by the form of the pleading." *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 847 (Tex.2005). Former article 4590i defined a health care liability claim as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or *other claimed departure from accepted standards of medical care or health care or safety* which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (Vernon 2005)) (emphasis added). "Health care" is "any act or treatment performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(2) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(10) (Vernon 2005)). "Medical care" is "any act defined as practicing medicine ... per-

formed or furnished, or which should have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(6) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(19) (Vernon 2005)).

■ A hospital is a health care provider. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(3) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(12) (Vernon 2005)). Former article 4590i thus applies to Methodist as a health care provider and to Dr. Khan as a physician if the asserted causes of action are based on claimed departures from an accepted standard of medical care, health care, or safety of the patient. *Diversicare*, 185 S.W.3d at 847. "A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *Id.*

■ Marine expressly alleged in its first amended petition that Methodist and Dr. Khan "fail[ed] to exercise ordinary care and diligence exercised by other physicians and health care providers in the same or similar circumstances." Marine further alleged five grounds of negligence that directly related to health care and medical care, i.e., an "act . . . performed or furnished, by [Methodist and Dr. Khan] . . . on behalf of [Guillory] during [his] medical care." *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(2), (6) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(10), (19) (Vernon 2005)). Specifically, those grounds of negligence each alleged a failure of Methodist and Dr. Khan to provide proper health care and medical care to Guillory. As set forth above, Marine could recover the expenses of maintenance and cure from a third-party tortfeasor; thus, Marine had stand-ing to bring Guillory's former article 4590i claim to recover the expenses of maintenance and cure for Guillory's injury, allegedly caused in whole or in part by Methodist and Dr. Khan. *See Liberty Seafood,* 38 F.3d at 757.

■ Because this dispute concerns the appropriate standard of care owed to Guillory regarding whether he should have been certified as fit for duty and sent out on an oceangoing vessel, Marine's claims are based on claimed departures from an accepted standard of medical care, health care, or safety of the patient. Although Marine contends that its "claims do not assert causes of action claiming that [Methodist and Dr. Khan] departed from accepted standards of *health or medical care,*" Dr. Khan not only examined Guillory on behalf of Marine but also on behalf of Guillory himself. Guillory suffered personally the effects of his sickness; thus, a proper certification regarding fitness for duty was for his benefit as well as Marine's. Further, as set forth above, the Agreement, which established a physician-patient relationship among the parties, was entered *on behalf of* Guillory as an employee covered by the Agreement. Thus, the health care services provided by Methodist and Dr. Khan were for Guillory's benefit. We conclude that Methodist and Dr. Khan had a duty to provide Guillory with the appropriate standard of care in conducting his examination.

Although we are not bound by the language of the pleading, *Diversicare,* 185 S.W.3d at 847, we need look no further than Marine's first amended petition in this case to determine the underlying nature of the claim, because Marine expressly alleged a departure from accepted standards of medical and health care: "failing to exercise ordinary care and diligence exercised by other physicians and health care providers in the same or similar cir-

cumstances." Furthermore, Marine may not recast claims that affect a professional standard of care to avoid the procedural requirements of former article 4590i. *See Murphy v. Russell,* 167 S.W.3d 835, 838–39 (Tex.2005) (holding that statute requires that claims that might involve a health care standard of care will be subject to 4590i). Thus, "we are not bound by [Marine's] characterization of the claims" as nonhealthcare liability claims. *Hector v. Christus Health Gulf Coast,* 175 S.W.3d 832, 835 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).[4]

Because this dispute concerns the appropriate standard of care that Methodist and Dr. Khan owed to Guillory, the act or omission complained of, i.e., certification as fit for duty, is an inseparable part of the rendition of medical services. Accordingly, we hold that the trial court did not err in treating Marine's underlying claims as health care liability claims and in applying the expert report filing requirements of former article 4590i in this case.

We overrule Marine's first issue.

### Motion to Extend Time to File Expert Reports

In its second issue, Marine contends that the trial court abused its discretion by not granting a 30–day extension from the date it filed its motion for an extension of time to file its expert report required by section 13.01(d) of former article 4590i. Specifically, Marine contends that the trial court should have granted a 30–day extension of time to file its report under section 13.019(g).[5]

■ On review of a dismissal of a medical malpractice claim with prejudice for noncompliance with the expert-report filing provision of section 13.01(d) of former article 4590i, the dispositive question is whether the trial court abused the discretion vested in it by the Legislature pursuant to former article 4590i, section 13.01(e). *See Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003); *Am. Transitional Care Ctrs. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001); *Williams v. Chisolm,* 111 S.W.3d 811, 814 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *Strom v. Mem'l Hermann Hosp. Sys.,* 110 S.W.3d 216, 220 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The same standard governs review of rulings that deny the 30–day grace period under section 13.01(g) of former article 4590i. *Walker,* 111 S.W.3d at 62; *Williams,* 111 S.W.3d at 814.

An abuse of discretion occurs when a trial court acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *See Walker,* 111 S.W.3d at 62; *Williams,* 111 S.W.3d at 814. The

---

4. Marine's contention that Methodist and Dr. Khan did not "treat" Guillory is inapplicable because, as set forth above, former article 4590i encompasses "treatment, lack of treatment, *or other claimed departure* from accepted standards of medical care or health care or safety." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (Vernon 2005)).

5. Marine appears at one point in its brief to contend also that the trial court should have granted a 30–day extension of time under section 13.01(f), because it cites that section at the end of its sentence stating, "Because no hearing had been convened as to either motion, [Marine's] Motion to Extend due to accident or mistake was timely filed." We construe this to be a typographical error intended to cite section 13.01(g) because the requested extension of time to file expert reports due to accident or mistake is applicable only to subsection (g). Section 13.01(f) alternatively allowed a 30–day extension of the 180–day period "for good cause shown after motion and hearing" not to exceed a 210–day period after filing the health care liability claim. *Pfeiffer v. Jacobs,* 29 S.W.3d 193, 197 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

abuse-of-discretion standard has different applications in different circumstances. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). Because a trial court has no discretion in determining what the law is, which law governs, or how to apply the law, we review these types of discretionary rulings de novo. *See id.* at 840; *Williams*, 111 S.W.3d at 814–15. In contrast, when we review a trial court's resolution of factual matters that underlie its discretionary rulings, we must defer to its factual resolutions, as well as any credibility determinations that possibly affected those resolutions, and may not substitute our judgment for its judgment. *See Walker*, 111 S.W.3d at 62; *Packer*, 827 S.W.2d at 839; *Williams*, 111 S.W.3d at 815.

Former section 13.01(d)(1)—(2) required a medical-malpractice claimant to "furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report" no later than the later of 180 days after filing of a health-care liability claim or the last day of any extended period under subsection (f) or (h) of section 13.01. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d)(1)-(2), (f), (h) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a), (c) (Vernon Supp.2005)).

In this case, it is undisputed that Marine's 180–day deadline to file an expert report expired on January 13, 2003. It is further undisputed that Marine waited until April 13, 2004, to file its motion to extend the expert report deadline.[6]

Section 13.01(g), which allowed a grace period for filing the expert reports required by section 13.01(d), states as follows:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant the grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g) (repealed 2003). A party who does not file an expert report has "failed to comply with a deadline established by [s]ubsection (d)." *Walker*, 111 S.W.3d at 61; *Williams*, 111 S.W.3d at 814.

Section 13.01(g) thus *required* that the trial court grant the claimant a 30–day grace period to comply with section 13.01(d) if the failure to file the required expert report was "not intentional or the result of conscious indifference but was the result of an accident or mistake." *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g) (repealed 2003). The "accident or mistake" standard for the granting of a section 13.01(g) grace period mirrors the standard that also controls setting aside a default judgment or reinstating a case dismissed for want of prosecution. *Walker*, 111 S.W.3d at 63; *Williams*, 111 S.W.3d at 815.

---

**6.** Section 13.01(g) does not require that the extension be sought before the expiration of 180 days. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g) (repealed 2003). *Pfeiffer*, 29 S.W.3d at 197. "The statute merely requires that the request for extension be made 'before any hearing' on a motion to dismiss under section 13.01(e)." *Pfeiffer*, 29 S.W.3d at 197 (quoting Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g)). Although the lapse of time in this case was extended, Marine's motion for extension was timely under 13.01(g) because it was filed prior to the hearing on the motions to dismiss. *See id.*

■■■■ In assessing whether failure to file a report was "due not to intentional disregard or conscious indifference but to accident or mistake," we examine the knowledge and acts of the claimant or the attorney. *Walker*, 111 S.W.3d at 64; *Williams*, 111 S.W.3d at 815. "If the factual assertions in the claimant's testimony are not controverted by the opposing party, the claimant satisfies his or her burden if the testimony sets forth facts that, if true, negate intentional or consciously indifferent conduct by the claimant," and the claimant is entitled to the 30–day grace period prescribed by 13.01(g). *Walker*, 111 S.W.3d at 64; *Williams*, 111 S.W.3d at 815–16. To determine whether the claimant's factual assertions are controverted, we look to the entire record. *Walker*, 111 S.W.3d at 64. "Unless the defendant specifically controverts the plaintiff's evidence supporting mistake, the plaintiff will prevail on that issue." *Landry v. Ringer*, 44 S.W.3d 271, 275 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

■■■ "Some excuse, but not necessarily a good excuse, is enough to warrant an extension of time to file the expert report, so long as the act or omission causing the failure to file the report *was, in fact, accidental.*" *Pfeiffer*, 29 S.W.3d at 198 (quoting *Nguyen v. Kim*, 3 S.W.3d 146, 152 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (citing *Horsley–Layman v. Angeles*, 968 S.W.2d 533, 536 (Tex.App.-Texarkana 1998, no pet.))) (emphasis in original). An accident or mistake is generally characterized by "inadequate knowledge of the facts or an unexpected happening that precludes compliance." *Pfeiffer*, 29 S.W.3d at 198.

■■■ "Texas courts have struggled to define the parameters of 'accident or mistake' in the context of section 13.01(g), with somewhat varying results." *Tesch v. Stroud*, 28 S.W.3d 782, 788 (Tex.App.-Corpus Christi 2000, pet. denied). A claimant whose attorney mistakenly believed a paralegal had timely sent the expert report and who immediately furnished the report upon receiving the defendant's motion to dismiss, was entitled to a new trial after his case was dismissed. *McClure v. Landis*, 959 S.W.2d 679, 681–82 (Tex.App.-Austin 1997, pet. denied). Likewise, a plaintiff who believed that section 13.01(d) was satisfied by the provision of a report about another defendant was entitled to an extension to file a proper report. *Horsley–Layman*, 968 S.W.2d at 536–37. Further, "calendaring errors have been held to establish accident or mistake." *Pfeiffer*, 29 S.W.3d at 198; *see also Nguyen*, 3 S.W.3d at 152; *Ferrell v. Ferrell*, 820 S.W.2d 49, 50 (Tex.App.-Corpus Christi 1991, writ denied); *Kirk v. Farmers Aerial Spraying Serv., Inc.*, 496 S.W.2d 739, 741–42 (Tex. Civ.App.-Amarillo 1973, no writ); *Republic Bankers Life Ins. Co. v. Dixon*, 469 S.W.2d 646, 647–48 (Tex.Civ.App.-Tyler 1971, no writ); *Newsom v. Boyd*, 203 S.W.2d 874, 877 (Tex.Civ.App.-Galveston 1947, no writ). Mere negligence, such as not reading the statute, is not an intentional act or conscious indifference. *Roberts v. Med. City Dallas Hosp.*, 988 S.W.2d 398, 403 (Tex. App.-Texarkana 1999, pet. denied). In addition, the supreme court held in a default judgment case that when uncontroverted affidavits showed that an original petition was misplaced in the defendant's office, the defendant's failure to answer suit did not constitute an intentional act or conscious indifference, but rather was the result of accident or mistake. *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex.1984); *see also State Farm Life Ins. Co. v. Mosharaf*, 794 S.W.2d 578, 584 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (holding that misplacement of original petition and subsequent failure to answer suit was result of accident or mistake and not of conscious indifference).

■ By contrast, "conscious indifference means 'failing to take some action which would seem indicated to a person of reasonable sensibilities under similar circumstances.'" *Pfeiffer*, 29 S.W.3d at 198. A trial court thus did not abuse its discretion by dismissing a case in which the plaintiff's attorney's only excuses for failing to meet the deadline were that the plaintiff had missed several appointments and the expert did not return her phone calls. *Estrello v. Elboar*, 965 S.W.2d 754, 754–58 (Tex.App.-Fort Worth 1998, no pet.). A trial court further did not abuse its discretion by dismissing a suit in which the attorney's reasons for not timely filing the expert report included the late date the case was referred to him, the large amount of work demanded by the case and others he was handling, and his assumption that opposing counsel would not enforce the statutory deadline. *Broom v. MacMaster*, 992 S.W.2d 659, 664 (Tex. App.-Dallas 1999, no pet.). A trial court also did not abuse its discretion by dismissing a case for failure to file an expert report timely when the facts refuted the claimants' assertion that they were unaware of the 180–day deadline for filing the report. *Nguyen*, 3 S.W.3d at 153–54.

■ In support of its motion for an extension of time, Marine produced an affidavit of its attorney, Jerry R. McKenney. The affidavit states the following:

I am the attorney responsible for litigation of the above-styled case. During the initiation of litigation in this matter, I undertook an analysis of the various claims available to [Marine]. Part of this analysis included reviewing the reports of Fred Pasternak, M.D. which set out his review of the medical facts and his opinion that the pre-employment screening and follow up procedures in Richard Guillory's case were carried out in a manner that departed from the applicable standard of care. In drafting the notice of claim letters and the pleadings on behalf of [Marine], I was guided by Dr. Pasternak's analysis and intended to use his reports to fulfill the requirements of [former article 4590i] with regard to production of an expert report that demonstrated the viability of the claims being asserted against the various defendants.

As the initial litigation proceeded, due to my own error, I did not file the reports within the time prescribed by the statute. The simple reason for this is that I inadvertently thought that I had produced them during the time that I was processing the initial disclosures, requests for disclosures and other discovery. This was a mistake or accident on my part. At no time did I intentionally decline to file the reports in the face of the requirement to do so nor did I simply ignore the requirement to do so; which would have made no sense with the reports already prepared. Rather, I mistakenly thought that I had done so and did not realize this error until I received a service copy of The Methodist Hospital's motion to dismiss. Shortly thereafter I filed the reports with a motion for extension of time to file them as provided for in . . . 13.01(g).

Along with its motion, Marine also produced copies of the reports purportedly intended to be filed within the 180–day period. The reports are dated January 1, 2001, and May 22, 2001, well before the filing deadline of January 13, 2003. Further, McKenney presented the following testimony at the hearing on the motions to dismiss:

Part of my evaluation of the case was the review of reports that had been obtained from a Dr. Fred Pasternak analyzing this—the case and the liability issues before the case was filed. My

intention at that point was to use those reports and file them early on in the case to satisfy the statutory requirements of Article 4590i for the expert reports to the extent that that applied to any of the defendants in this case, which again at that point was somewhat unclear.

In any case, as the case developed and as I worked on the case, I inadvertently did not file those reports. I thought that I had. I just simply got confused with what I was doing and didn't do that. That was my mistake. This was not a situation where I told somebody to do it and they didn't do it. I'm not going to stand here and blame it on a secretary or anybody else. It was purely my fault.

On the other hand, this is not a situation where I knew that they hadn't been filed and thought that there was some reason not to or that there was some other insidious basis here. Basically, it was just a screw-up on my part. It's entirely my responsibility. And it was an error.

Thus, McKenney presented specific evidence at the hearing that, but for his mistake, he would have filed the expert reports on time "to satisfy the statutory requirements of Article 4590i" and that he thought he had filed the expert reports timely. The record shows that Methodist and Dr. Khan did not specifically controvert Marine's evidence supporting mistake. *See Landry,* 44 S.W.3d at 275. Further, although McKenney testified at the hearing on the motions to dismiss, neither Methodist's nor Dr. Khan's attorney asked McKenney any questions at the hearing nor tried to present any evidence to controvert McKenney's testimony. In light of the uncontroverted evidence presented in McKenney's affidavit and testimony, we conclude that Marine's failure to file expert reports was due to an accident or mistake and not intentional or resulting from conscious indifference. Although we acknowledge that Marine does not have a "good excuse" for its failure to file the reports on time, a good excuse is not required. *Pfeiffer,* 29 S.W.3d at 198. As set forth above, some excuse will suffice. *Id.* We hold that Marine's proof may indeed have shown negligence on the part of its attorney, but Marine nonetheless met its burden to prove that it did not timely file its expert reports due to accident or mistake and proved that its failure to file the reports was unintentional and not the result of conscious indifference. *See State Farm,* 794 S.W.2d at 584; *Strackbein,* 671 S.W.2d at 39.

We further conclude that this case is distinguishable from *Kidd v. Brenham State School Texas Department of Mental Health and Mental Retardation,* cited by Methodist and Dr. Khan as dispositive. 93 S.W.3d 204 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). In that case, the Fourteenth Court of Appeals held that the trial court did not abuse its discretion in refusing to grant an extension of time because the attorney's testimony that "the ball was dropped in my office" was insufficient to show accident or mistake when the attorney could not remember what actually happened and whether he had miscalculated the date that the reports were due. *Id.* at 207–08. In this case, by contrast, McKenney gave a specific reason why he had not timely filed the reports, which was because he thought that he had already done so.

Because the uncontroverted evidence shows that McKinney did not file the reports due to accident or mistake, we hold that the trial court abused its discretion by not granting Marine's motion for the 30–

day extension of time prescribed in section 13.01(g) of former article 4590i.

We sustain Marine's second issue.

### Conclusion

We reverse the orders of dismissal signed by the trial court on June 22, 2004, and remand this case to the trial court for further proceedings consistent with this opinion.